## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**EDWARD DIAZ MARTINEZ**

      Petitioner,

v.                                                    Case No. 2:26-cv-854-WJ-KRS

**MARKWAYNE MULLIN,** Secretary, U.S.
Department of Homeland Security;
**TODD BLANCHE**, U.S. Attorney General;
**DAVID VENTURELLA**, Director,
Immigration and Customs Enforcement;
**MARY DE ANDA-YBARRA**,
ICE Field Office Director, Detention and Removal;
**WARDEN**, Otero County Processing Center,
*in their official capacities*,[1]

      Respondents.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER comes before the Court upon Petitioner Edward Diaz Martinez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Preliminary Injunctive Relief **[Doc. 1]**.[2]  Petitioner, a 21-year-old Honduran citizen, was apprehended by state authorities as a result of a traffic accident in Gilchrist County, Florida in August 2025.  When it was determined he did not possess status to lawfully remain in the United States, he was swiftly transferred to ICE custody.  **Pet'n ¶¶ 36–37; Doc. 5 ¶ 6.**

---

[1] The Petition names as Respondents certain officials who no longer hold the relevant positions.  Pursuant to Fed. R. Civ. P. 25(d) and Administrative Order No. 26-MC-00004-03 of this Court, the Court substitutes the proper respondents.

[2] Although the pleading is titled Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Preliminary Injunctive Relief, the body of the Petition contains no claim for a preliminary injunction or showing why the present facts warrant such relief.  Accordingly, the Court construes the Petition as a request for relief in habeas pursuant to § 2241 and not for additional, distinct relief.

**BACKGROUND**

Petitioner represents that he entered the United States without inspection on or about March 29, 2021, at the age of 16. Several days later, United States Border Patrol Agents apprehended him by the United States-Mexico border and took him into custody. Given Petitioner was just 16 years old at the time, he was permitted to be released to his mother, who resided in Florida. *See* **Doc. 5 ¶ 5; Doc. 1-2**. Petitioner was thereafter served with a Notice to Appear. *See* **Pet'n ¶ 41**; **Doc. 5 ¶ 5**.

On or about August 12, 2025, Petitioner was a passenger in a car that became involved in an accident. **Pet'n ¶ 36**. Two ambulances and a state trooper arrived at the scene and questioned Petitioner. Although Petitioner had suffered injuries requiring medical attention, after learning Petitioner's identity, the trooper made a phone call, placed Petitioner in handcuffs and transported him to county jail. After processing, Petitioner was taken to the hospital before being returned to custody. Petitioner was then transported to Jacksonville, then Orlando, and finally to Ochopee, Florida before being transferred to the Otero County Processing Center in New Mexico, on or about August 23, 2025. *Id.* **¶ 40**.

Petitioner requested reconsideration of his detention. On September 5, 2025, Immigration Judge (IJ) Enrique Holguin ordered Petitioner's release from custody subject to a $10,000 bond. **Doc. 1-4.** Weighing in favor of Petitioner's release, IJ Holguin found that the record showed Petitioner had established "stability" and ties to the community, including living with his mother and that Petitioner did not pose a danger to the public. *Id.* Weighing against release, IJ Holguin found that Petitioner had not demonstrated a viable path to lawful status. *Id.* IJ Holguin found that a bond of $10,000 would adequately "mitigate the risk of flight." *Id.* The United States appealed from the bond order, which stayed release — resulting in Petitioner's continued

detention.

Since the outset of his detention in August 2025, Petitioner has pursued various avenues of immigration relief.  On September 16, 2025, Petitioner applied for asylum.  **Pet'n ¶ 13**.  Following a merits hearing on October 29, 2025, that application was denied, and Petitioner was ordered removed.  **Doc. 5 ¶ 11**.  Petitioner again sought a redetermination of his custody status in February 2026.  *Id.* **¶ 12**.  IJ Samuel Wiliams denied release on the grounds that the court lacked jurisdiction to issue a bond due to Petitioner's "manner of entry," there was an order of removal in place; Petitioner "had a previous bond hearing in 2025 which was denied" and "[d]ue to his speculative relief" Petitioner was at risk of flight.  *Id.* **¶ 12**.

According to the present record, Petitioner remains detained within this judicial district. The Court has jurisdiction over the Petition pursuant to § 2241.

## DISCUSSION

### I.    Respondents do not Provide a Tenable Legal Basis for Petitioner's Detention

This case presents the dispositive question of whether a noncitizen who resides in the United States for years (about five, in this case) is properly detained under 8 U.S.C. § 1225(b)(2)(A), a provision of the INA that requires the detention of certain noncitizens seeking admission to the United States at its borders, or instead, § 1226(a), which bestows discretionary authority on the Executive to detain individuals pending removal proceedings upon a finding that they present a danger to the community or a flight risk.  *See* 8 U.S.C. § 1226(a); 8 C.F.R. § s1236.1(c)(8) (explaining that a noncitizen may be released from custody if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding").  The United States Court of Appeals for the Tenth Circuit recently answered this question in a precedential decision binding

on federal district courts within this Circuit. *Santillan Quiroz v. Mullin*, ---F.4th----, 2026 WL 1876709 (10th Cir. June 30, 2026). In *Santillan Quiroz*, the Tenth Circuit holds that § 1225(b)(2)(A) does not govern the detention of noncitizens like Petitioner, who previously entered and now reside in the United States unlawfully. 2026 WL 1876709, at *6–7 (10th Cir. June 30, 2026). Section 1225 is the sole statutory authority the Government invokes to justify Petitioner's detention. Given that the Tenth Circuit holds § 1225 does not apply to individuals like Petitioner, the Government has not identified a valid statutory basis for Petitioner's continued detention.

Although Respondents' proffered reason for Petitioner's detention rests on an improper legal basis, that does not necessarily mean that Congress has provided no mechanism for detention.[3] Section 1226 generally governs detention of noncitizens pending a decision on removal. 8 U.S.C. § 1226(a). Under that provision, the Attorney General may detain individuals upon issuance of a warrant and continue to detain them pending a decision on removal if it is determined that they are sufficiently dangerous or at risk of flight. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8), (d). The Court cannot conclude, on this record, that Petitioner's detention is unauthorized under § 1226.

## II.       The Appropriate Habeas Relief is a Prompt Bond Hearing

In prior cases presenting similar claims for relief, the Court has determined that the appropriate habeas relief is the process owed under § 1226 — namely, a bond hearing. *See, e.g.*, *Flores Leynez v. Blanche*, No. 26-cv-1006, 2026 WL 1804830 (June 23, 2026). Granting such relief in this case may seem redundant because before this habeas action, Petitioner received two

---

[3] Respondents also contend that, should Petitioner's removal order become final, § 1231 would authorize his detention. **Doc. 5 at 21–24**. That contention is premature. Petitioner's removal order remains on appeal, *see id.* **at 21**, and the Court need not decide whether § 1231 would govern his detention if and when the order becomes administratively final.

bond hearings.  However, under the particular circumstances of this case, the Court finds that another adjudication of Petitioner's custody status is appropriate.

Because IJ Williams found that he lacked jurisdiction to issue a bond, the February 12, 2026 order denying Petitioner's release appears to rest, at least in part, on a legal premise that is no longer tenable.  As the Court understands it, the conclusion rests on the BIA's pronouncement in *In re Yajure Hurtado*, 28 I&N Dec. 216, 229 (Sep. 5, 2025) that effectively eliminated immigration judges' authority to grant release on bond to any individual, who, like Petitioner, historically entered the United States without admission or inspection.  That decision was premised on an interpretation of § 1225's scope that the Tenth Circuit has since abrogated.  *See Santillan Quiroz*, 2026 WL 1876709, at *16.  The order does not make clear whether the court's additional findings provide independent, sufficient bases for detention or whether the jurisdictional finding inextricably informed the court's ultimate conclusion.

At the first bond hearing, the immigration judge applied the ordinary § 1226 bond standard and directed Petitioner's release on bond after finding that he was not a danger to the community and that any flight risk could be adequately mitigated by conditions of release.  Although the hearing was conducted under the correct legal standard, the posture of Petitioner's immigration proceedings has since changed.  Following that hearing, Petitioner's asylum application was denied.  At the second hearing, the immigration judge apparently applied *Matter of Hurtado* and treated Petitioner as subject to detention under § 1225(b)(2)(A), which, as stated, is inapposite. Thus, a new hearing under the proper legal standard, at which both parties may present current evidence, is warranted.

Respondents SHALL provide Petitioner a bond hearing, consistent with governing legal standards, **within seven (7) days**.  If such hearing does not take place within seven (7) days,

Petitioner shall be immediately released. Petitioner's counsel is to provide notice to this Court **within three (3) days** of any bond hearing or change in Petitioner's custody status.

SO ORDERED.

_____/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE